Rhea D. MORTON, Plaintiff,

v.

Joseph A. CALIFANO, Jr., etc., Defendant.

No. CIV-2-77-133.

United States District Court,
E. D. Tennessee,
Northeastern Division.

June 9, 1978.

2. See Article 139 of the Charter of Organization of American States, 2 UST 2394, TIAS 2361, as amended, 21 UST 607, TIAS 6849.

**910**

Carleton W. Smith, Greeneville, Tenn. and Thomas D. Dossett, Kingsport, Tenn., for plaintiff.

John Cary, U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for the judicial review of the final decision of the defendant Secre-

tary, 42 U.S.C. § 405(g), denying the plaintiff's claim for widow's insurance benefits under the Social Security Act. 42 U.S.C. §§ 402(e), 423(d)(2)(B). The defendant moved for a judgment on the pleadings. Rule 12(c), Federal Rules of Civil Procedure.[1]

The plaintiff filed an application for such benefits on June 17, 1976, alleging that she had been unable to engage in gainful activity all of her life because of a heart condition, nerve trouble, and a thyroid disorder. That claim was denied initially and on reconsideration. An administrative law judge also denied that application on May 26, 1977, and this became the final decision of the defendant Secretary when an appeals council approved it.

The administrative law judge found, *inter alia* :

\* \* \* \* \* \*

3. The specified period during which [the plaintiff] may establish that she is under a "disability" extends beyond the date of this decision.

4. The \* \* \* [plaintiff] experiences an emotional disorder and periodic gastrointestinal discomfort.

5. The \* \* \* attendant medical findings with respect to any of the above impairments, as recited in the Listing of Impairments in the Appendix to Subpart P of Social Security Administration Regulation No. 4 for such impairments [are not present].

6. The \* \* \* medical findings with respect to [the plaintiff's] impairments are not equivalent in severity and duration to the listed findings of any impairment listed in the Appendix to Subpart P. Therefore, the [plaintiff's] impairments, considered singly and in combination, are not medically the equivalent of the listed impairments.

7. \* \* \* [P]rior to the date of this decision \* \* \* [the plaintiff's] impairments were [not] of the level of

[1] The plaintiff failed to make a timely response to such motion and, thus, is deemed to have waived any opposition thereto. Local Rules 12(b), 11(f).

severity which, under Regulations prescribed by the Secretary, is deemed sufficient to preclude an individual from engaging in any gainful activity.

\* \* \* \* \* \*

■ Such findings by the Secretary are conclusive if they are supported by substantial evidence in this record. *Wokojance v. Weinberger*, C.A. 6th (1975), 513 F.2d 210, 212 [3]. The Court may determine only whether the Secretary's decision is based upon such evidence. *LeMaster v. Weinberger*, C.A. 6th (1976), 533 F.2d 337, 339 [1]; *Ingram v. Richardson*, C.A. 6th (1972), 471 F.2d 1268, 1271 [4]. " \* \* \* We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. Labor Board* [1938], 305 U.S. 197, 229 [59 S.Ct. 206, 217, 83 L.Ed. 126]. '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' *Labor Board v. Columbian Enameling & Stamping Co.* [1939], 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660, 665]. \* \* \* " *Consolo v. Federal Maritime Com.* (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140–141 [9].

■ To qualify for benefits as a disabled widow, the plaintiff must have established that she was at least 50 years of age but, not 60; that she was the widow of a wage-earner who died fully insured; and that she had physical or mental impairments which, under regulations promulgated by the Secretary, was deemed to be of such severity as to preclude her from engaging in any gainful activity. 42 U.S.C. §§ 402(e), 423(d)(2)(B). *Sullivan v. Weinberger*, C.A. 5th (1974), 493 F.2d 855, 857 [1], certiorari denied (1975), 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455; *Barnes v. Richardson*, D.C. Tenn. (1970), 322 F.Supp. 699, 700 [1, 2]; *Henry v. Richardson*, D.C.Tenn. (1970), 320 F.Supp. 296. The plaintiff was required also to have shown that her impairments became manifest within 7 years from the month of the insured wage-earner's death. *Sullivan v. Weinberger, supra.*

■ The test of disability for a widow claiming benefits is more stringent than that for a wage-earner. A widow must have established her inability to engage in any gainful activity, 42 U.S.C. § 423 (d)(2)(B), while a wage-earner need establish only his inability to engage in substantial gainful activity, 42 U.S.C. § 423(d)(1)(A). Furthermore, nonmedical factors, such as age, education and work experience, are not considered in adjudicating a widow's claim. *Sullivan v. Weinberger, supra*, 493 F.2d at 862 [10].

Pursuant to the authority delegated by the Congress in the 1967 amendments to Title II of the Social Security Act, 42 U.S.C. § 423(d)(2)(B), the Secretary prescribed a listing of medical impairments which he deemed to be sufficiently severe to preclude an individual from engaging in any gainful activity. This listing was adopted as part of the Social Security Administration regulation no. 4, § 404.1501, *et seq.*, as appendix to subpart P (Appendix to 20 C.F.R. §§ 404.1501, *et seq.*).

■ Section 404.1504 of the Social Security Administration regulations no. 4, 20 C.F.R. § 404.1504, provides that a widow may be found to be under a disability only if her impairment(s) are either listed in such appendix or are, singly or in combination, medically the equivalent of an impairment listed in the appendix. Thereunder, medical findings must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques; and on the question of medical equivalence, the record must include a medical judgment furnished by one or more physicians designated by the Secretary. 20 C.F.R. §§ 404.1505 and 404.1506.

The plaintiff Mrs. Rhea D. Morton was born on March 28, 1920. The wage-earner, her deceased husband, Mr. Brownie E. Morton, died on June 5, 1976. Mrs. Morton has not remarried.

Mrs. Morton complained of a heart condition stemming from a childhood bout with rheumatic fever. Section 4.00B of the ap-

pendix to subpart P of the aforementioned regulations no. 4 states that " * * * [c]ongestive heart failure is not considered to be established for the purpose of § 4.02 unless there is evidence * * * of signs of vascular congestion such as hepatomegaly, peripheral or pulmonary edema as well as other appropriate findings. * * * " Dr. John B. McKinnon, an internist who examined the plaintiff on September 13, 1976, stated in his report that " * * * she has no significant pain, dyspnea, or any other symptoms of congestive heart failure. * * * " He reported further that " * * * [t]he baseline electrocardiogram was normal with no evidence of any old myocardial disease, * * * " and that the plaintiff's heart was not enlarged.

The plaintiff alleged disability because of a thyroid disorder. She underwent a thyroidectomy sometime in the 1950's. Section 9.00 concerns problems with the endocrine system. Section 9.00A states that " * * * [d]isability is caused by overproduction or underproduction of hormones resulting in structural and/or functional changes in the body. * * * " The medical evidence of record herein includes no mention of any continuing problem in this area.

Mrs. Morton also complains of a mental disorder. She alleges that she has suffered 5 nervous breakdowns, but there is no record that she received any psychiatric treatment. The pertinent regulation provides as follows:

* * * * * *

12.04 Functional nonpsychotic disorders (psychophysiologic, psychoneurotic and personality disorders, drug addiction and alcoholism). Manifested by marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people and persistence of one of the following:

A. Demonstrable structural changes mediated through psychophysiological or channels (e. g., duodenal ulcer); or

B. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

C. Persistent depressive affect with insomnia, loss of weight, and suicidal ideation; or

D. Phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

E. Compulsive, ritualistic behavior; or

F. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or

G. Long-lasting, habitual, or inappropriate patterns of behavior manifested by one of the following:

1. Seclusiveness and autistic thinking; or

2. Antisocial or amoral behavior (including pathologic sexuality) manifested by: (a) inability to learn from experience and inability to conform with accepted social standards, leading to repeated conflicts with society or authority, and (b) by psychopathology documented by mental status examination and the results of appropriate, standardized psychological tests; or

3. Pathologically inappropriate suspiciousness or hostility manifested by psychopathology documented by mental status examination and the results of appropriate, standardized psychological tests.

* * * * * *

20 C.F.R. §§ 404.1501, et seq., appendix to subpart P.

Dr. William Wiley, a psychiatrist, examined Mrs. Morton on September 1, 1976. In his report of September 8, he commented on the plaintiff's ability to function in family and work environments, as follows:

* * * * * *

There has been a significant reduction in this patient's daily activities. She has not been able to perform all her house work for some time. She is able to relate well to relatives and friends in social situations. She would be able to relate to and communicate with supervisors and

co-workers in a work situation. She does possess the basic educational competence to perform simple arithmetic computations and read. She would be able to understand, remember and carry out simple instructions. Because of her depression she would not be able to respond appropriately to ordinary work pressures or behave independently in a standardized work situation. * * *

This patient would benefit from supportive outpatient care. * * * However, in view of her age and the duration of her symptoms, her prognosis must be considered guarded.

\* \* \* \* \* \*

Dr. Wiley's diagnosis was that the plaintiff suffers from chronic depressive neurosis.

Dr. Burgin E. Dossett, Jr., an internist and specialist in cardiovascular diseases and one of the plaintiff's personal physicians, examined Mrs. Morton on October 1, 1976 in connection with a respiratory infection. At that time, she was also complaining of severe abdominal discomfort, GI upset and tenderness and spasms in her left lower abdomen. He reported that she had lost about 25 pounds in the past year or two. He further reported that:

\* \* \* \* \* \*

She looks and apparently feels terrible and I think has more wrong with her than we have been able to demonstrate. This may be all due to psychiatric problems which is [sic] resulting in severe anorexia as well as the gastro-intestinal symptoms, but at this time, there is no possibility that this woman could be able to be gainfully employed.

\* \* \* \* \* \*

In a letter dated January 26, 1977, Dr. Dossett stated that the denial of widow benefits at the administrative level "* * * was clearly in error as the consultant * * * Dr. Wiley * * * stated clearly that she was disabled, and his note would certainly indicate to me that she does meet the criteria in the listing under nonpsychotic disorders. * * * "

At the administrative hearing herein, Mrs. Morton testified that she had lost 20 to 25 pounds in the past year or two, that she watches television news only to provide background noise, that she cannot concentrate to read, that she does not attend church, and that she does nothing she considers recreational. She visits her son's family regularly, but she stated that she frequently stays in the bedroom while the others watch television. Ms. Irene Street, Mrs. Morton's sister, testified that the plaintiff is unable to do her own housework, and the plaintiff's son testified concerning his mother's depression.

The Secretary concedes that Dr. Wiley's findings indicate a significant reduction in the plaintiff's daily activities, but the Secretary found that other portions of Dr. Wiley's report indicated no serious impairment to her memory, judgment, reasoning or ability to relate to or communicate with others. The Secretary found no further substantial evidence of any deterioration in her personal habits or limitation on her interests or associations. In a letter of April 7, 1977, Dr. Wiley attempted to explain portions of his report dated September 1, 1976, as follows:

\* \* \* \* \* \*

In the next to last paragraph of that report it was stated that this patient was "able to relate to and communicate with supervisors and co-workers in a work situation." It was meant that she was able to understand, for example, a description of a job or instructions from a supervisor or co-workers, but because of her depression would not be able to do the job adequately or "respond appropriately to ordinary work pressures and behave independently in a standardized work situation" as stated later in the report.

\* \* \* \* \* \*

From the foregoing it is apparent that Mrs. Morton's significant problems stem from her mental impairments and not from an organic physical disease. The Secretary denied benefits apparently because Dr. Wiley's report did not precisely track the requirements of Section 12.04, *supra.*

" * * * The determination of whether there is substantial evidence to support the findings of the Secretary depends on the record as a whole. * * * " *Hephner v. Mathews*, C.A. 6th (1978), 574 F.2d 359, 362. The Secretary was not entitled to base his decision on a single piece of evidence to the disregard of other pertinent evidence. *Idem.*

■■■ Although Dr. Wiley concluded, *inter alia*, that the plaintiff could understand instructions in a work environment, and that she relates well to relatives and friends in a social environment, these types of observations are negated by his express finding that she could not " * * * respond appropriately to ordinary work pressures or behave independently in a standardized work situation * * * [because of her depression]." Under these circumstances, there is not substantial evidence in this record to support the Secretary's finding that Mrs. Morton is able to engage in gainful activity. See *Branham v. Gardner*, C.A. 6th (1969), 383 F.2d 614, 627–632 [5–8].

■■■ The disability provisions of the Social Security Act are not to be construed strictly so as to deny disability but must be interpreted liberally in favor of disability. *Salyer v. Weinberger*, D.C.Tenn. (1974), 395 F.Supp. 1174, 1177 [2]. The opinion of a treating physician is entitled to substantial weight as compared to the opinion of a physician who has examined the plaintiff on only one occasion. *Branham v. Gardner*, *supra*, 383 F.2d at 634 [12].

■■■ The Secretary's denial of the plaintiff's claim for widow's insurance benefits must, therefore, be reversed. The Secretary's motion for judgment on the pleadings hereby is DENIED. Interlocutory judgment will enter, reversing the final decision herein of the Secretary and remanding this action to him with directions to grant the plaintiff's claim for widow's benefits.[2] Rule 58(1), Federal Rules of Civil Procedure.

Immediately upon its determination, the Secretary will report to the Court the aggregate amount of past-due benefits paid or payable to the plaintiff. Thereupon, counsel of record will file with the Court a detailed itemization of the time he has expended, and the reasonable expenses he has incurred, in representing the plaintiff in this Court. Entry of a final judgment herein will await the determination and allowance by the Court of a reasonable fee for the services rendered herein by the attorney for the plaintiff. 42 U.S.C. § 406(b).

■■■

2. The fact that the plaintiff has not filed herein a cross-motion for a judgment in her favor does not preclude the entry of the same. " * * * While summary judgment is frequently utilized as a procedural device in Social Security appeals such procedure is not technically correct or necessary under the provisions of 42 U.S.C. § 405(g). In deciding a case based on that provision, the Court can look no further than the pleadings and transcript of the record before the agency. No *de novo* hearing is authorized. Ruling on the transcript and pleadings constitutes final disposition of the cause, and cannot properly be labeled summary within the contemplation of Rule 56, F[ederal] R[ules] [of] C[ivil] P[rocedure]. * * * " *Baker v. Richardson*, D.C.Fla. (1971), 327 F.Supp. 349, 351 [2, 3], n. 1; *accord: Johnson v. Weinberger*, D.C.Colo. (1974), 388 F.Supp. 628, 629 [1–2]; *Torphy v. Weinberger*, D.C.Wis. (1974), 384 F.Supp. 1117, 1119 [1–3]; *Pippin v. Richardson*, D.C.Fla. (1972), 349 F.Supp. 1365, 1367 [1].