Mary J. KENNEY, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant.

No. C82–722Y.

United States District Court,
N.D. Ohio, E.D.

Oct. 14, 1983.

Robert L. Heller, Anzellotti, Sperling, Pazol & Elliott Co., L.P.A., Youngstown, Ohio, for plaintiff.

Carolyn Watts Allen, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

KRENZLER, District Judge.

Plaintiff, Mary J. Kenney, filed the instant complaint on March 11, 1982. The complaint seeks judicial review of the Secretary of Health and Human Services' final decision denying plaintiff's application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i), 423.

Defendant filed an answer to the complaint on July 19, 1982.

Jurisdiction of this Court is based upon 42 U.S.C. § 405(g).

Pursuant to L.Civ.R. 19.05, this case was referred to the Magistrate for a report and recommended decision on September 3, 1982. On November 3, 1982, the Magistrate sent a notice to plaintiff's counsel directing him to file a motion for summary judgment within 30 days, and warning that "[f]ailure of plaintiff to file a timely motion may result in a dismissal for want of prosecution." Neither party filed a motion for summary judgment or other motion or brief in support of its position.

The Magistrate filed his report and recommendation on January 5, 1983. In his report, the Magistrate recommended that the complaint be dismissed for want of prosecution because the plaintiff had failed to comply with the Magistrate's order to file a summary judgment motion.

No objections to the Magistrate's report have been filed.

For the reasons that follow, this Court finds that failure to prosecute is not a proper basis for dismissal of a complaint seeking judicial review of the Secretary's decision denying Social Security benefits.

Judicial review of the denial of Social Security benefits is authorized by 42 U.S.C. § 405(g). Section 405(g) provides, in pertinent part, that:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by civil action ... brought within the district court of the United States for the judicial district in which the plaintiff resides .... As a part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decisions complained of are based. *The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment* affirming, modifying, or reversing the decision of the Secretary, with or without remand .... The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive .... (emphasis added).

Thus, an appeal to the district court from the Secretary's decision is instituted by the filing of a complaint, to which the Secretary must respond by filing a transcript of the record, including the evidence upon which the findings and decisions complained of are based. Once the complaint and a copy of the record are filed, the Court has before it all that is necessary to enter a judgment on the merits.

As was done in the instant case, the Court has the option, pursuant to L.Civ.R. 19.05, of referring the case to the Magistrate for a report and recommendation. Alternatively, the Court may review the record and reach its decision without the assistance of a Magistrate's report and recommendation. In either case, it is the Court's responsibility to make the final determination as to whether substantial evidence supports the Secretary's decision, or whether the hearing procedures were in accordance with due process.

When the case is referred to the Magistrate, the Magistrate may, and customarily does, afford the parties an opportunity to file additional briefs or motions in support of their positions. Generally, the Magistrate issues an "order" directing the parties to file cross-motions for summary judgment within a specified time period. Although the filing of summary judgment motions or other supplementary materials is not required by § 405(g), this procedure

has been used since it is beneficial to both the parties and the Court. Summary judgment motions give the parties an opportunity to define the issues and to argue the facts and law upon which they rely. At the same time, these motions aid the Court in focusing in on the pertinent portions of the transcript and understanding the positions of the parties.

 The use of summary judgment motions in § 405(g) proceedings, however, is neither necessary nor technically correct. Summary judgment motions, as defined by Fed.R.Civ.P. 56, contemplate the use of evidentiary material in the form of affidavits, depositions, answers to interrogatories, and admissions. In Social Security appeals, however, the Court may "look no further than the pleadings and the transcript of the record before the agency," and may not admit additional evidence. *Morton v. Califano*, 481 F.Supp. 908, 914 n. 2 (E.D.Tenn.1978); 42 U.S.C. § 405(g). Therefore, although summary judgment motions are customarily used, and even requested by the Court or Magistrate, such motions merely serve as vehicles for briefing the parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits.

In the instant case, the Magistrate ordered the plaintiff to file a motion for summary judgment within 30 days. In this "order" the Magistrate warned that "[f]ailure of plaintiff to file a timely motion may result in a dismissal for want of prosecution." The plaintiff did fail to file the motion or any other brief in support. Thus, the Magistrate recommended dismissal for failure to prosecute, without ever addressing the merits of the case.

 The Magistrate's recommendation is without legal support. Accordingly, this Court holds that a complaint filed pursuant to 42 U.S.C. § 405(g), appealing the Secretary's final decision denying Social Security disability benefits, may not be dismissed for failure of the plaintiff to prosecute when the plaintiff fails to file a summary judgment motion as requested by the Magistrate. By so holding, this Court does not

intend to approve of the plaintiff's neglect in failing to comply with the Magistrate's request. However, as § 405(g) does not require the filing of motions or briefs for the Court to render a decision on the merits, the failure to file such motions cannot be the basis of a dismissal for failure to prosecute. Stated another way, once the plaintiff has filed a complaint stating his grounds for appeal from the Secretary's decision, he has done all that is required of him by § 405(g). Further, once the Secretary has filed a transcript of the record, all that is required by § 405(g) of both parties has been done.

Having found that the Magistrate's recommendation to dismiss for failure to prosecute is contrary to the law, this Court will proceed to review the record and render a judgment on the merits of the case.

Plaintiff filed her application for disability insurance benefits on November 18, 1980. Plaintiff alleged that she had become disabled on February 5, 1977 due to a heart condition, blindness in the right eye, and poor vision in the left eye. Plaintiff's application was denied initially, and upon reconsideration.

A *de novo* hearing, at which plaintiff was represented by counsel, was held before the Administrative Law Judge (hereinafter ALJ) on July 7, 1981. The ALJ issued a decision denying plaintiff's claim on October 19, 1981. The ALJ made the following findings of fact:

1. The claimant met the special earnings requirements on February 5, 1977, the alleged onset date and continued to meet them until March 31, 1977, but not thereafter.

2. The claimant suffered from a longstanding history of a heart murmur and hypothyroidism through march 31, 1977, [sic] however, these impairments did not significantly limit her ability to perform basic work-related functions through March 31, 1977.

3. Pursuant to Regulations No. 404.-1520(c) and 404.1521 and the above finding, the claimant's impairments were not

severe, as they did not significantly limit her ability to perform work-related functions through March 31, 1977.

4. Since the claimant did not have a severe impairment through March 31, 1977, she may not be considered disabled within the meaning of the Social Security Act, as amended.

In the instant complaint, plaintiff alleges that the Secretary's final decision, as embodied in the ALJ's report, is not supported by substantial evidence.

■■■ This Court's scope of review is limited to determining whether the Secretary's decision is supported by substantial evidence. *Walston v. Gardner*, 381 F.2d 580 (6th Cir.1967). Substantial evidence consists of such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla of evidence, but less than a preponderance. If there is enough evidence that would justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir.1981); *LeMaster v. Weinberger*, 533 F.2d 337 (6th Cir.1976).

In order to qualify for disability insurance benefits, a claimant must satisfy four criteria:

(1) be insured for disability insurance benefits;

(2) have not attained the age of 65;

(3) have filed an application;

(4) be under a "disability."

42 U.S.C. § 423(a)(1)(A)–(D).

The second and third criteria are not at issue here.

The first criterion, that of being insured for disability insurance benefits, is explained in 42 U.S.C. § 423(c). The general rule set forth in that section provides as follows:

(c) For purposes of this section—

(1) An individual shall be insured for disability insurance benefits in any month if—

(B)(i) if he had not less than twenty quarters of coverage during the forty-quarter period which ends with the quarter in which such month occurred ....

The fourth requirement, that of being under a "disability," is defined in 42 U.S.C. § 423(d), as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or ... to last for a continuous period of not less than 12 months ...."

The ALJ found that the last time period for which plaintiff was insured ended as of March 31, 1977. Exhibit 11 of the certified record, a copy of plaintiff's earnings record, confirms the ALJ's findings. Thus, the issue before the Court is whether there was substantial evidence to support the Secretary's decision that plaintiff was not under a disability as of March 31, 1977.

The record reveals that plaintiff was born November 3, 1938. Plaintiff's past relevant work experience consisted in work as a barmaid and short-order cook. At the hearing before the ALJ, plaintiff testified that she was laid off from her job as a barmaid in February of 1977 due to lack of business. Plaintiff also testified that, subsequent to the layoff, she worked on a substitute basis at another bar.

Most of the medical records submitted to the ALJ are reports of examinations or surgery performed subsequent to plaintiff's last insured date of March 31, 1977.

Reports of H.N. Sheshadri, M.D., dated April 1980 through July 1980 indicate that plaintiff had an acute duodenal ulcer with associated duodenitis and gastritis. The later reports indicate, however, that the condition subsequently improved, leaving only slight duodenitis without evidence of acute ulceration.

Evidence of plaintiff's heart condition is extensively documented. A report prepared by Oscar Gutierrez, M.D., in December 1980, indicates that plaintiff, who saw the doctor for gynecological services, had slight cardiomegaly in July 1977 and a sys-

tolic murmur in spite of a normal electro-cardiogram.

A report prepared by Dr. James Williams on December 6, 1980, indicates that plaintiff reported left anterior chest pains which lasted about five minutes. In a subsequent letter dated January 27, 1981, Dr. Williams advised that plaintiff was in Trumbull Memorial Hospital with acute heart problems and would probably be transferred to another facility for possible heart surgery.

Plaintiff was transferred to University Hospital in Cleveland where she had open-heart surgery on February 4, 1981. In a letter of April 1981, Dr. Williams opined that plaintiff could never lift or carry anything more than five pounds, and could not bend, squat, crawl, climb, or reach.

The medical records from Trumbull Memorial Hospital indicate that plaintiff had a history of systolic heart murmur dating back to 1964, but that her main heart trouble developed in December 1980 when she was getting anterior chest pain on exertion, and shortness of breath when on the steps or doing heavy work.

The record further reveals that claimant had a baby in July 1977 without cardiac symptoms or problems.

As to plaintiff's eye impairment, the record reveals that plaintiff was examined by N.K. Newman, M.D., on June 22, 1976. The doctor noted that "The right eye [had] a total retinal detachment with faint light perception," apparently caused by an accident some time in the past. The left eye was correctable to 20/25 with glasses, and noted to be quite near-sighted.

At the hearing, plaintiff testified that she felt better since her open-heart surgery, but that the ticking of the artificial heart bothered her. Plaintiff further testified that she became depressed over her own poor vision and the hyperactivity of her youngest child. At the time of the hearing, the only medication plaintiff was taking was tylenol.

In the ALJ's opinion, he reviewed the evidence and concluded as follows:

In summary the medical evidence discloses that the claimant has a 20 year history of mitral valve deficiency. In spite of this condition she was able to perform substantial gainful activity on a regular basis until February, 1977 at which time she was laid off due to lack of work. Her testimony has also established that she worked sporadically after that date until November, 1980; subsequently she delivered a child in July, 1977, and this did not precipitate any cardiac complications. It was not until November or December, 1980, that the claimant began experiencing shortness of breath on exertion and was found to have congestive heart failure which subsequently necessitated an aortic valve replacement in January, 1981. The claimant was also discovered to posess [sic] only light perception in the right eye with corrected vision in the left eye to 20/25 as of June, 1976. She also has had a history of hypothyroidism, gastric ulcers, duodenal ulcers, and chronic obstructive pulmonary disease with no evidence that any of these problems significantly limited her ability to perform substantial gainful activity. Thus, none of these conditions impaired her functional ability to perform basic work related activities through March 31, 1977.

▬ As stated above, this Court has rejected, as contrary to the law, the Magistrate's recommendation that plaintiff's complaint be dismissed for failure to prosecute. However, this Court, having reviewed the transcript of the record, finds that the complaint should be dismissed on the merits. Specifically, this Court finds that there is substantial evidence to support the ALJ's finding that plaintiff was not disabled as of March 31, 1977, the last day she qualified for disability benefits. This Court notes that a condition which becomes disabling after the claimant last meets the special earnings requirement cannot be the basis for a finding of disability. *Gibson v. Celebrezze*, 220 F.Supp. 271 (E.D.Ky.1963).

Accordingly, the defendant's final decision denying plaintiff's application for benefits is affirmed. The complaint is hereby dismissed.

IT IS SO ORDERED.