Dawn NEWMAN, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. G86–201 CA.

United States District Court,
W.D. Michigan.

Feb. 26, 1988.

Keary W. Sawyer by Sawyer & Thieme, Grand Rapids, Mich., for plaintiff.

John A. Smietanka, U.S. Atty. by Daniel M. LaVille, Asst. U.S. Atty., Grand Rapids, Mich., for defendant.

OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of a final decision of the Secretary of Health and Human Services (Secretary) denying her claim for a period of disability and disability insurance benefits.

Plaintiff alleges she became unable to work in September, 1981 due to back pain (Tr. 80). After administrative denial of plaintiff's claim, a *de novo* hearing was held before an Administrative Law Judge (ALJ) who entered a decision denying the claim. This decision, which was later approved by the Appeals Council, has become the final decision of the Secretary and is now before the court for review pursuant to motions for summary judgment filed by both plaintiff and the Secretary.

Plaintiff was born on October 24, 1958 (Tr. 39), and has completed twelve years of formal education (Tr. 40). Her relevant work history included working at fast-food restaurants (Tr. 102). This work involved lifting up to 50 pounds with frequent lifting and carrying of up to 25 pounds, and 8 hours of standing or walking.

The ALJ found that plaintiff's insured status ended on March 31, 1982. Plaintiff had a severe impairment consisting of status post lumbar surgeries. The ALJ found this impairment not so severe as to meet or equal the Listing of Impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. In the ALJ's assessment, the medical evidence established that plaintiff's pain did not preclude her from performing medium work during the relevant time in question. Since plaintiff's past work as a fast-food restaurant worker was medium exertion work, plaintiff was found capable of performing her past relevant work, and therefore she was found not disabled (Tr. 20). 20 C.F.R. 404.1520(e).

### Substantial Evidence

The first issue before the court is whether or not there is substantial evidence in the administrative record to support the decision of the Secretary. *Ross v. Richardson,* 440 F.2d 690 (6th Cir.1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126

(1938)); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981). Moreover, the court must look at the evidence "taken as a whole." *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980).

■ Upon careful review of the record, the court finds substantial evidence to support the ALJ's findings. In reaching this result, the court finds the following factors to be particularly significant.

■ Plaintiff alleges her disability began in September 1981 (Tr. 80). Since her insured status ended on March 31, 1982 (Tr. 19), it was incumbent upon her to prove that she became disabled prior to that date. *LeMaster v. Weinberger,* 533 F.2d 337 (6th Cir.1976).

Plaintiff claimed that even prior to her alleged onset date she has suffered the worst pain imaginable an average of six days a week, 24 hours a day (Tr. 55). The medical evidence, however, fails to support such extreme claims. In fact, plaintiff experienced some relief from her symptoms when, on November 3, 1981, Dr. James H. Coretti removed two surgical rods which had been implanted in an earlier surgery on November 7, 1979 (Tr. 128, 122). Although plaintiff complained of some back muscle pain on February 15, 1982, Dr. Coretti noted that plaintiff's condition was significantly improved by use of a whirlpool bath and medication (Tr. 131). Plaintiff was experiencing "considerable relief" with "only" one Elavil tablet a day and she discontinued use of her Tolectin prescription (Tr. 131).

Following plaintiff's last date of insured status, plaintiff saw no physician for her back impairment until November of 1983 (Tr. 134, 135). In other words, plaintiff, who was experiencing "considerable relief" just prior to her last date of insurability, did not see a physician about her back condition for more than a year-and-a-half thereafter. This period is of critical importance since plaintiff must prove that her disability began before March 31, 1982 and lasted a continuous 12–month period.

Plaintiff alleges that despite the lack of objective medical evidence, she was dis-

abled during this period. Plaintiff testified that she saw no doctors during this period of time because her unemployed husband prevented her from doing so (Tr. 62). Plaintiff, however, did see Dr. Allen Davies, a cardiologist, during this time period (Tr. 132). She complained of "palpations." After a full evaluation, Dr. Davies recommended "only reassurance" that plaintiff was fine (Tr. 133). Plaintiff offers no explanation as to why she had access to the services of a cardiologist, but not those of an orthopaedic specialist during the time when her alleged back pain was at the worst imaginable level.

Plaintiff claims that she was suffering from ankylosing spondylitis throughout this period (Tr. 37).[1] Ankylosing spondylitis is a progressive disease of unknown origin which causes inflammation of the vertebrae and surrounding structures of the spine leading to fusion and stiffness of the spine. *Schmidt's Attorney's Dictionary of Medicine,* (1986) and Tr. 189. The majority of patients with ankylosing spondylitis remain fully employed (Tr. 190). Plaintiff was not diagnosed with ankylosing spondylitis until September 21, 1984 (Tr. 140).

Substantial evidence exists that plaintiff, whether suffering from ankylosing spondylitis during the time in question or some other condition, was not disabled. The objective medical evidence does not support plaintiff's claims of debilitating pain. For instance, as late as September 26, 1984, specialists at the University of Michigan found plaintiff's range of motion in hips and shoulders to be normal (Tr. 145). Plaintiff could toe and heel walk (Tr. 148). A CT scan revealed no disc herniation or root compression (Tr. 148). An electroneuromyography (ENMG) of October 12, 1984 was essentially normal (Tr. 150, 151).[2] X-rays taken on October 11, 1984 revealed "generous spinal canal capacity with no evidence of focal or diffuse disc protusion"

(Tr. 153). A year later, x-rays again showed plaintiff's nerve roots normal (Tr. 242).

The voluminous medical transcript contains many more examples that contradict plaintiff's allegation of debilitating pain. Suffice it to say, the medical evidence, even years after the date plaintiff's insured status ended, fails to show objective proof of a physical abnormality which could be expected to produce the debilitating pain plaintiff alleges. Plaintiff must provide proof of such a physical abnormality to the ALJ to prevail. *Duncan v. HHS,* 801 F.2d 847 (6th Cir.1986).

■ The court is also mindful that credibility determinations rest solely with the Secretary. *Myers v. Richardson,* 471 F.2d 1265 (6th Cir.1972). Although subjective evidence of pain and disability is one of the elements to be considered in determining whether plaintiff is disabled, such evidence must be evaluated with due consideration for credibility, motivation, and medical evidence of an impairment. *Halsey v. Richardson,* 441 F.2d 1230, 1236 (6th Cir.1971); *Rolenaitis v. Richardson,* 336 F.Supp. 1235, 1237 (E.D.Pa.1974), *aff'd,* 475 F.2d 1396 (3rd Cir.1973). The ALJ had an opportunity to observe the demeanor of the plaintiff, evaluate what was said in the light of how it was said and consider how it fit with the rest of the evidence before him. Therefore, the ALJ's determination as to credibility should not be disregarded lightly. *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir. 1978).

*New Medical Evidence*

■ Plaintiff has on three occasions supplied the court with medical records, most of which are dated subsequent to the closing of the administrative record on September 16, 1985 (Tr. 78). Plaintiff requests the court in the interest of fairness and justice

---

1. Spondylolisthesis is the medical term for forward displacement of one vertebra over another. Scoliosis is a curvature of the spine. *Dorland's Illustrated Medical Dictionary,* 26th ed. (1981).

2. An ENMG is a recording and study of the intrinsic electrical propensities of skeletal muscle in which the nerve of the muscle under study is stimulated by application of an electric current. *Dorland's, supra.*

to add these doctor's reports to the existing record for review. See plaintiff's papers, docket numbers 10, 12, and 13. In social security appeals, however, the court may "look no further than the pleadings and the transcript of the record before the agency," and may not admit additional evidence. *Kenney v. Heckler,* 577 F.Supp. 214, 216 (N.D.Ohio 1983), citing *Morton v. Califano,* 481 F.Supp. 908, 914, n. 2 (E.D.Tenn. 1978). No *de novo* hearing is authorized. Plaintiff's new medical evidence, therefore, may not be reviewed in determining whether the ALJ's decision is supported by substantial evidence.

■ The court does have the statutory authority to review the proffered evidence for the purposes of determining whether to remand the case to the Secretary for re-evaluation in light of the new evidence.

> The court may ... at any time order additional evidence to be taken before the Secretary, but only upon showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...

42 U.S.C. § 405(g). The party seeking remand bears the burden of showing that a remand is proper under § 405. *Willis v. Secretary of HHS,* 727 F.2d 551 (6th Cir. 1984).

Plaintiff has not met that burden in this case. The evidence presented is not material since it sheds no light on the issue of whether plaintiff was disabled prior to March 31, 1982, the last date plaintiff was insured. Indeed, much of the new evidence relates to plaintiff's condition three-and-a-half years or more after that date.

Furthermore, in order to show good cause, plaintiff must give a valid reason for her failure to obtain the new evidence prior to the administrative hearing. *Oliver v. Secretary of HHS,* 804 F.2d 964, 966 (6th Cir.1986). Plaintiff advances no reasons as good cause for her failure to obtain this evidence prior to trial. Therefore, a remand would be improper.

Accordingly, plaintiff's motion for summary judgment is denied, defendant's mo-

tion for summary judgment is granted, and the complaint will be dismissed.