Christine LeMASTER, Plaintiff-Appellant,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 75–1425.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 30, 1975.

Decided April 16, 1976.

* The Honorable Arlin M. Adams, Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

Frank J. Neff, Barkan, Barkan & Neff, Columbus, Ohio, for plaintiff-appellant.

William W. Milligan, U. S. Atty., Thomas D. Thompson, Columbus, Ohio, for defendant-appellee.

Before McCREE, LIVELY and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This is an appeal by Christine LeMaster from the judgment of the district court affirming the final decision of the Secretary of Health, Education and Welfare denying her application for social security disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*

Mrs. LeMaster filed her application for disability benefits on June 27, 1972, alleging she became unable to work in May, 1964. Her application was initially denied. Following *de novo* review before an administrative law judge, however, a decision finding Mrs. LeMaster totally disabled within the meaning of the Act was reached. Upon its own motion, the Appeals Council reviewed the decision of the administrative law judge and reversed that decision, finding Mrs. LeMaster not to be disabled. The decision of the Appeals Council became the final decision of the Secretary.

While Mrs. LeMaster did not file her application for benefits until June 27, 1972, her insured status under the Act ended on September 30, 1965. Thus to qualify for disability benefits it was incumbent upon Mrs. LeMaster to establish that any impairment from which she was suffering had existed for a continuous twelve month period prior to the termination of her insured status under the Act. *Harrison v. Richardson,* 448 F.2d 638 (6th Cir. 1971).

Mrs. LeMaster's claim is that since May, 1964, she has suffered a total disability due to multiple sclerosis. The sole medical diagnosis in the administrative record suggesting that Mrs. LeMaster has suffered from multiple sclerosis since 1964 is found in a letter of February 28, 1973 addressed "To Whom It May Concern" from John H. Holzaepfel, M.D. The full text of the body of the letter is as follows:

Re: Christine LeMaster

To Whom It May Concern:

On August 5, 1964, we carried out a total abdominal hysterectomy, a bilateral wedging of the ovaries, suspension of the ovaries and lysis of pelvic adhesions on the above patient. Following this episode of surgery the patient developed a progressive multiple sclerosis. The multiple sclerosis has become exacerbated over the period of the year. It was not caused by the surgery that we carried out; however, it will tend to be exacerbated post surgery.

The patient has been under the care of Dr. Ernest Johnson of Dodd Hall, The Ohio State University College of Medicine.

The patient has been progressively disabled by the multiple sclerosis and is unable to carry out any form of work. She has been disabled since August of 1964.

We feel that this patient is a candidate for Social Security disability.

Sincerely yours,

/s/ JOHN H. HOLZAEPFEL, M.D.

John H. Holzaepfel, M.D.

JHH:ow

Dr. Holzaepfel, a full-time specialist in obstetrics and gynecology, first treated Mrs. LeMaster in 1957. He saw her again in 1964, at which time she complained of menometrorrhagia[1] which she said had been present for one and one-half years. In 1964, Dr. Holzaepfel performed two operations on Mrs. LeMaster in connection with gynecological problems she was having at that time. After the operations he continued to see Mrs. LeMaster through 1967 performing routine pelvic examinations on her. He saw her again for a routine follow-up examination on December 17, 1970.[2] The record does not indicate that Dr. Holzaepfel performed any subsequent examinations upon Mrs. LeMaster, although she testified at the hearing that she had last seen him in 1971. There is no evidence in the record to indicate that Dr. Holzaepfel ever performed a neurological examination on Mrs. LeMaster.

Mrs. LeMaster contends that Dr. Holzaepfel's letter of February 28, 1973, when read in conjunction with the other medical reports filed in her case, provides substantial evidence to support a finding that she was totally disabled with multiple sclerosis in May, 1964, and that the Appeals Council's decision to the contrary is without support in the record. She claims that while no other physician was able specifically to diagnose her affliction as multiple sclerosis, their reports show the existence of symptoms indicative of that disease. For example, she notes that the report of Dr. Thomas J. Williams concerning an examination of Mrs. LeMaster on May 7, 1965, indicated that she complained at that time of fatigue and pain. The report of Dr. Robert Rehm, a urologist, indicated that Mrs. LeMaster was suffering from recurrent urinary tract infections prior to August 20, 1965. Further, the letter of Dr. Judson Millhon of September 11, 1972, indicated that since 1965 Mrs. LeMaster had seen several doctors who had made various diagnoses, and that symptoms of weakness, visual problems, acute fatigue and difficulty in walking had been indicated. Finally, the medical report of Dr. James Barnes, who examined Mrs. LeMaster in April and May, 1972, indicated his impression that she was suffering from "[P]robable early degenerative disease of the central nervous system, possible disseminated sclerosis".

Appellant contends that it is logical that only Dr. Holzaepfel, who had the reports of the other physicians who examined Mrs. LeMaster and who had treated Mrs. LeMaster himself for over thirteen years, would be able to diagnose her ailment as multiple sclerosis. She further contends that her testimony and that of her husband, apparently credited by the administrative law judge, support her contention that she was totally disabled due to multiple sclerosis in 1964.

■ Our review, of course, is limited in scope to a determination of whether the decision of the Secretary is supported by substantial evidence. 42 U.S.C. § 405(g). *Wokojance v. Weinberger,* 513 F.2d 210 (6th Cir. 1975); *Ingram v. Richardson,* 471 F.2d 1268 (6th Cir. 1972). Substantial evidence has been defined in our circuit as:

"Substantial evidence means more than a scintilla; it is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Combs v. Gardner,* 382 F.2d 949, 956 (6th Cir. 1967), *see also Craig v. Weinberger,* 522 F.2d 394 (6th Cir. 1975).

■ We recognize that where, as here, the decision of the Secretary is contrary to that of the administrative law judge who originally heard the case, evidence supporting that decision may be less substantial and must be reviewed with greater care. As noted by the Supreme Court in *Univer-*

---

1. Excessive uterine bleeding occurring during both the menses and at irregular intervals. *Dorland's Illustrated Medical Dictionary* (25th ed. 1974).

2. The foregoing information concerning Dr. Holzaepfel's treatment of Mrs. LeMaster was reported in a "To Whom It May Concern" letter from Dr. Holzaepfel dated June 7, 1972. That letter made no mention of Mrs. LeMaster's multiple sclerosis.

*sal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951):

We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. 340 U.S. at 496, 71 S.Ct. at 169, 95 L.Ed. at 472.

▉ Our review of the evidence presented before the Secretary convinces us, as it did the district judge, that substantial evidence supports the finding of the Appeals Council that Mrs. LeMaster was not totally disabled for a continuous twelve month period prior to September 30, 1965. The Appeals Council in its decision fully and fairly evaluated all the medical evidence in the record. The Council had before it reports of five physicians other than Dr. Holzaepfel, none of whom diagnosed Mrs. LeMaster as having multiple sclerosis prior to September 30, 1965.[3]

Of particular significance are the reports of Dr. Barnes and Dr. Millhon, both of whom examined Mrs. LeMaster in 1972. Dr. Barnes is a full-time specialist in neurological surgery, while Dr. Millhon is a full-time specialist in internal medicine. As noted earlier, Dr. Barnes concluded in 1972 that Mrs. LeMaster had a probable *early* degenerative disease of the central nervous system, with a significant functional over-

lay. Dr. Millhon in his report noted the absence of any "hard neurological findings". He concluded that Mrs. LeMaster was suffering from a functional disease.

Both of these reports contradict Dr. Holzaepfel's conclusion that Mrs. LeMaster had been suffering from multiple sclerosis since 1964. Although the Appeals Council considered Dr. Holzaepfel's conclusion that Mrs. LeMaster was totally disabled due to multiple sclerosis since 1964, it was not required to accept it. 20 C.F.R. 404.1526.[4] The judgment of the district court is affirmed.

---

**3.** The other doctors whose reports were considered examined Mrs. LeMaster at various times from the period 1965 through 1972.

**4.** 20 C.F.R. 404.1526 provides:
The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, "disabled," "permanently disabled," "totally disabled," "totally and permanently disabled," "unable to work," or a statement of similar

import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.