Leonard NEW, Plaintiff,

v.

Patricia R. HARRIS, Secretary of Health and Human Services, Defendant.

Civ. A. No. C-2-80-174.

United States District Court, S. D. Ohio, E. D.

Dec. 16, 1980.

David S. Bloomfield, Columbus, Ohio, for plaintiff.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

DUNCAN, District Judge.

Plaintiff Leonard New brings this action under 42 U.S.C. § 405(g) and § 1383(c)(3) for review of a final decision of the Secretary of Health, Education and Welfare (now Secretary of Health and Human Services) denying his applications for social security disability insurance and supplemental security income benefits. This matter is before the Court on the cross-motions of the parties for summary judgment.

Plaintiff filed his application for disability insurance benefits on February 23, 1978 alleging that he became disabled in 1971, at age 35, by black lung trouble, ulcers, and a nervous condition. Plaintiff filed his application for supplemental security income

benefits on March 2, 1978. Both applications were denied initially and upon reconsideration by the Bureau of Disability Insurance of the Social Security Administration. Plaintiff requested a hearing before an administrative law judge. On June 14, 1979 plaintiff, who was not represented by counsel, appeared and testified at the hearing. On July 23, 1979 the administrative law judge issued a decision finding that Mr. New is not disabled within the meaning of the Act. On January 15, 1980 the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Secretary of Health, Education and Welfare.

The facts of record are fully and fairly set out in the administrative law judge's July 23, 1979 decision which is incorporated herein by reference.

Plaintiff Leonard New was born June 23, 1936. He has a seventh grade education. He has worked as a construction laborer, bulldozer operator, mechanic, service station attendant, and loader operator.

Plaintiff testified that his most serious problem is with his lungs. He said that Dr. Jindra told him that he had only 45 per cent air capacity in his left lung and that he was permanently and totally disabled for the rest of his life because the condition would not improve and there was nothing he could do for it. Plaintiff said that he has a strangling sensation in his lungs and a cough.

Mr. New also testified that he has constant pain and hurt in his back and legs. He said that he gets muscle spasms. He takes Talwin as needed for the pain because, he testified, "I don't like to fool with drugs." He takes maybe one or two Talwin tablets then goes two or three days without any pain medication, "and then I'll start hurting real bad again, and then I'll take another one." He said that the Talwin "eases things off . . . it still hurts, but it don't hurt as bad."

Plaintiff testified that he had suffered from an ulcer condition in the past. He no longer takes prescribed medication for his ulcers. He does sometimes take Tums.

Plaintiff has some loss of hearing in his right ear and fluid in the ear. But he no longer takes the prescribed drops for the ear because when they get on his neck they burn. Plaintiff testified that he is bothered by nerves. He takes one or two Valium, 5 mg. a day. They calm him down and relax him (which helps with the pain).

Plaintiff testified that during a typical day he gets up at dawn and dresses. He watches T.V., then goes outside and sits around. He drives to the store once a day and visits a neighbor. He said that he doesn't help his wife much around the house, except to pour gasoline out of the truck for the lawnmower and to sometimes screw a loose knob back on a cabinet or perform a similar chore.

Plaintiff estimated that he could sit only about 30 minutes then his legs would get numb and his back would hurt so much that he would have to get up. He thought he could stand for only about 10 minutes because his legs start hurting, and they shake. He believed that he could walk about 200 feet, then he would be completely out of breath and his legs would be tired. When going up and down stairs his knees buckle. Plaintiff estimated he could lift 25 to 30 pounds.

On September 15, 1978 Dr. Louis J. Jindra reported that he had first examined Mr. New on May 10, 1978. Plaintiff suffers from dyspnea. Dr. Jindra diagnosed chronic bronchitis, emphysema, and exogenous obesity. On March 28, 1978 Dr. R.C. Estrada examined plaintiff at the request of the Secretary. He reported that he smoked one to two packs of cigarettes a day. He was 70½ inches tall and weighed 228 pounds. He had an increased AP diameter of his chest. On examination, Dr. Estrada heard occasional rhonchi, but no rales. An x-ray was interpreted to show no active pulmonary infiltrate. There was evidence of chronic lung disease and fibrotic changes and fibronodular old granulomatous lesions of both lung fields. Pulmonary function studies reported plaintiff's height as 70½ inches, his $FEV_1$ as 2.13 liters, and his MVV as 103 liters. Dr. Estrada stated that these

values indicated the presence of a combined restrictive and obstructive pulmonary disease.

During an April 6, 1979 hospitalization, plaintiff reported a history of 35 years of smoking two packs of cigarettes a day. He was also treated for tuberculosis in 1973. The hospital report states that plaintiff becomes short of breath on exertion after walking 100 yards. On physical examination he had a mildly increased AP chest diameter. Diffuse sibulant and sonerous rhonchi were heard on ausculation together with a prolonged expiratory time on the fourth expiration.

Although plaintiff complains of back and leg pain, the medical evidence of record indicates that he suffers from lumbosacral strain. Dr. Estrada reported that a neurological examination was negative. There was no evidence of muscle spasm. Straight leg raising was negative. Plaintiff had a reasonably good range of motion in his lumbar spine. He was able to walk on his heels and toes. Plaintiff's treating orthopedic physician, Dr. Richard M. Ward, had plaintiff hospitalized on April 6, 1979 at the Riverside Methodist Hospital for evaluation of his low back. An examination failed to disclose any objective evidence of a serious back disorder. The height and alignment of his lumbar vertebral bodies was normal. The posterior elements were normal. On examination, there was only very mild tenderness to palpation over the lumbosacral spine area at L–3 to L–5. There was no tenderness of the paraspinal muscles. Dr. Ward ruled out a herniated nucleus pulposus.

■ This Court's review of the decision of the Secretary is limited to a determination of whether her findings are supported by substantial evidence. 42 U.S.C. § 405(g). *Richardson v. Peràles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). It is not the Court's function to resolve conflicts in the evidence or to determine issues of credibility. This is solely the province of the Secretary. *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir.

1975). Pain alone may be disabling, but the Secretary is not required to fully credit a claimant's subjective complaints of pain and discomfort if there is not "an underlying medical basis" for them. *McCann v. Califano*, 621 F.2d 829, 832 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361–362 (6th Cir. 1978).

Plaintiff moves for summary judgment and remand on the grounds that (1) the administrative law judge erred in his evaluation of plaintiff's nervousness; (2) the administrative law judge erred in his finding that plaintiff's lack of regular usage of pain medication demonstrated that his pain was not disabling; and (3) the Secretary failed to meet his burden of demonstrating that plaintiff can perform substantial gainful work in his lessened capacity.

The administrative law judge's decision notes that Dr. Jindra diagnosed only chronic bronchitis, emphysema, and exogenous obesity and did not mention plaintiff's nervousness. The questionnaire sent to Dr. Jindra did not specifically ask him for information concerning plaintiff's psychiatric condition. The administrative law judge also noted that Dr. Ward, plaintiff's treating orthopedic surgeon, stated that Mr. New had a good ability to relate to others and to take care of his personal needs, and that there had been no change in his interests, habits, or impairment to his recent or remote memory.

Plaintiff contends that the administrative law judge should have asked Dr. Jindra to specifically comment on Mr. New's nervousness because he testified at the hearing before the administrative law judge that he had discussed his nervous condition with Dr. Jindra.

Dr. Jindra did indicate his diagnosis of plaintiff in his report to the Secretary. Plaintiff has the burden of presenting evidence of disability. Although plaintiff was not represented by counsel before the administrative law judge, he was represented by counsel on the appeal to the Appeals Council. If Dr. Jindra had inadvertently failed to include information concerning plaintiff's nervous condition, then counsel

could have brought that information to the attention of the Appeals Council.

■ Moreover, there was considerable other evidence in the record that plaintiff's nervous condition does not amount to a severely limiting impairment. Daily he is able to go to the store and visit with a neighbor. There do not appear to be any severe restrictions in his daily activities which are the result of a mental or emotional condition. Under these circumstances, the administrative law judge did not err in his assessment of Mr. New's nervous condition.

■ The administrative law judge discounted plaintiff's subjective complaints of severe, disabling pain:

> [T]he claimant's complaints of constant severe pain are not accepted as credible in view of the apparent lack of regular usage of pain medication and the claimant's testimony as to his daily activities.

Plaintiff asserts that his daily activities are limited, and that he does not use drugs because of his fear of over-medication.

Talwin is a non-narcotic, non-prescription analgesic. Plaintiff testified that it gave him relief, but that he nonetheless did not take Talwin daily despite his testimony that he was in constant, severe pain. Under these circumstances, the administrative law judge's comment on his sporadic pain medication was not error.

Plaintiff did testify, overall, that his daily activities were limited. Nonetheless, he did admit to quite a bit of daily activity. He drives to the store once a day, and he drives to visit a neighbor once a day. Although he watches some television, he normally goes outside and occupies himself there for some portion of each day. The administrative law judge had the right to consider plaintiff's account of his daily activities in reaching his determination on the issue of credibility.

Finally, plaintiff contends that there was not substantial evidence in the record for the administrative law judge's assertion that plaintiff has the physical capacity to perform light work and that his reliance on the Medical-Vocational Guidelines to demonstrate that there are jobs plaintiff can perform was erroneous.

■ Plaintiff is unable to perform his previous jobs; therefore, the Secretary had the burden of demonstrating that he could perform substantial gainful work in his lessened capacity. *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

Plaintiff clearly is suffering from chronic obstructive pulmonary disease and some low back pain resulting from lumbosacral strain. In addition, he has some hearing loss and fluid in his right ear which does not preclude substantial gainful activity. He was previously treated for ulcers, but the ulcers are presently not an impairing condition. He also suffers from some nervousness which is relieved, to some significant degree, by Valium, 5 mg. The administrative law judge had the difficult job of determining whether these combined impairments preclude plaintiff from engaging in all substantial gainful activity.

Plaintiff himself testified that his most serious disability was his pulmonary disease. Although the condition certainly does limit his ability to perform substantial gainful activity, there are no medical reports of record indicating that the condition is totally disabling. To be disabled by a chronic obstructive airway disease on the basis of pulmonary function studies values alone, a person of plaintiff's height would have to have an $FEV_1$ equal to or less than 1.4 liters and an MVV equal to or less than 45 liters. Plaintiff's actual pulmonary function studies values are greatly in excess of these. Section 3.02, Subpart P, Appendix 1—Listing of Impairments.

■ Similarly, although plaintiff testified that he has severely disabling low back pain, complete tests rule out any disc defect, and the only substantiated diagnosis is chronic lumbosacral strain without any evidence of significant muscle spasm. Under these circumstances, the Court concludes that there is substantial evidence in the record for the administrative law judge's

determination that physically plaintiff retains the residual functional capacity for light work as that term is defined in 20 C.F.R. § 404.1510(c).

Plaintiff contends that the Medical-Vocational Guidelines set out in Subpart P, Appendix 2 are not applicable to his case because he also suffers from the non-exertional nervous condition. The Guidelines provide that "they may not be fully applicable where the nature of an individual's impairment does not result in" physical limitations in the claimant's ability to meet strength requirements of jobs. Section 200.00(e), Subpart P, Appendix 2—Medical-Vocational Guidelines. When there are combined exertional and non-exertional impairments which result in both strength limitations and non-exertional limitations, the Medical-Vocational Guidelines are applied first to determine whether plaintiff may be disabled by strength limitations alone. If he is not disabled by strength limitations alone, then the Guidelines "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs which would be contraindicated by non-exertional limitations." Section 200.00(e)(2), Subpart P, Appendix 2—Medical-Vocational Guidelines.

■ In the present case, plaintiff's physical limitations do not preclude light work. The question, then, is whether his nervousness results in non-exertional work related limitations. There is no evidence of any of the types of non-exertional limitations on employment as set in § 12.04, Subpart P, Appendix 1—Listing of Impairments. Further, there is no evidence that plaintiff would be unable to follow work instructions, would be unable to get along with his supervisors and co-employees, or would be unable to concentrate on and pay attention to work processes. Under these circumstances, the Court concludes that the administrative law judge did not err in applying the Medical-Vocational Guidelines to determine that plaintiff, considering his age, education and prior work experience, is able to engage in substantial gainful activity generally available in the national economy.

■ Plaintiff contends that because the Medical-Vocational Guidelines do not refer to specific jobs, the Secretary has not discharged his duty of demonstrating that plaintiff can perform substantial gainful work. He relies upon a statement in *Hephner v. Mathews*, 574 F.2d 359, 362–363 (6th Cir. 1978) that "a finding of capacity to work" cannot be "expressed . . . in terms of a vague catch-all phrase such as 'light' work." Instead, it must be "in terms of specific types of jobs." First, the administrative law judge's determination that plaintiff retains the residual functional capacity to perform light work is not standardless. The term "light work" is defined by 20 C.F.R. § 404.1510(c). Second, the Medical-Vocational Guidelines have been adopted by the Secretary since the decision in *Hephner* to reduce the need for vocational testimony and to attempt to eliminate variance in individual cases where the claimants have essentially the same physical and non-exertional limitations. The Medical-Vocational Guidelines are based on administrative notice the Secretary has taken of jobs generally available in the national economy. The Secretary evaluated information contained in the *Dictionary of Occupational Titles*, published by the Department of Labor, *County Business Patterns*, published by the Bureau of Census, *Census Reports, Occupational Analyses*, prepared by the Social Security Administration, the *Occupational Outlook Handbook*, published by the Bureau of Labor Statistics, and other generally available information relating to the age, educational, work experience, and exertional demands of various jobs. See, 20 C.F.R. § 404.1566(d) (August 20, 1980). Since "these tables and rules are based on a wealth of information available about jobs existing in the national economy" vocational expert testimony is unnecessary in most cases. *Jones v. Harris*, ¶ 17,-074 CCH Unemployment Ins.Rptr. (E.D. Tenn. March 18, 1980). The Court has carefully reviewed the record and concludes that there are no unusual facts in the present case which would have required the administrative law judge to seek the assistance of a vocational expert.

WHEREUPON, the Court HOLDS that plaintiff's motion for summary judgment and remand is without merit; and, therefore, it is DENIED. The Court FURTHER HOLDS that defendant's motion for summary judgment is meritorious; and, therefore, it is GRANTED.

The decision of the Secretary of Health, Education and Welfare is AFFIRMED. This action is hereby DISMISSED.