**Oliver Lee DAVIS, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. No. 81—CV–3364–DT.**

United States District Court, E.D. Michigan, S.D.

April 22, 1986.

OPINION AND ORDER

COHN, District Judge.

## I. Background

This social security disability case is before me for a second time. At the time of the administrative law judge's (ALJ) first report, plaintiff was 51 years old which is classified as "approaching advanced age," 20 C.F.R. § 404.1563(c). He has a ninth grade education (Tr. 41), which is classified as "limited," § 404.1564(b)(3). His past work as a press operator was unskilled (Tr. 100). He alleges disability from heart and stomach trouble, spinal problems, a chest condition, and a broken right ankle.

The "grid," Pt. 404, Subpt. P, App. 2, directed a finding of disabled if plaintiff had a residual functional capacity (RFC) for sedentary work, § 201.09, but not if his RFC was light, § 202.10. The Secretary originally found that plaintiff could not perform his past relevant work but was capable of "light work with a sedentary component" (Tr. 15, ¶ 4). The Secretary also found that such jobs existed in significant numbers in the national economy, and thus plaintiff was not disabled. Upon appeal, I remanded to determine if plaintiff was capable of a wide range of light work activities, § 202.00(b).

After the two administrative hearings on remand, the ALJ found that plaintiff was 55 years old (Tr. 106), which is classified as "advanced age," 20 C.F.R. § 404.1563(d) (persons 55 or over). The ALJ found that plaintiff was capable of medium work. He discredited plaintiff's complaints of pain and the diagnosis of plaintiff's treating physician (Zeiger) that plaintiff suffered from nonexertional mental impairments. Applying the "grid," the ALJ found plaintiff not disabled.

A magistrate recommended reversing the Secretary and granting plaintiff's motion for summary judgment. He found that the ALJ's reliance on the medical advisor's (Sobel) opinion that plaintiff can perform medium work was insubstantial evidence to contradict Zeiger's opinion that

Michael Tashman, Southfield, Mich., for plaintiff.

Geneva Halliday, Asst. U.S. Atty., for defendant.

plaintiff cannot engage in substantial gainful activity and is totally disabled.

The Secretary objects on two grounds. First, the Secretary argues that Zeiger's opinion exceeds his qualifications as a non-board certified general osteopath. The Secretary argues that Sobel is more qualified to state an opinion as to plaintiff's ability to work. Second, the Secretary argues that the evidence either conflicts with Zeiger's opinion or provides no support for it. The Secretary does not discuss the evidence but merely refers the court to the ALJ's whole discussion.

For the reasons that follow, I reject the magistrate's report and grant summary judgment for the Secretary for the period before plaintiff was 55 but grant summary judgment for plaintiff for the period beginning with his 55th birthday.

## II. Law of the Case

It was improper for the ALJ to conclude on remand that plaintiff is capable of medium work. The ALJ's first report found that plaintiff was capable of "light" work. A magistrate concluded that there was substantial evidence that plaintiff was not disabled before January, 1981 due to a vertebral fracture at T–12. The magistrate did not challenge the ALJ's finding that plaintiff was capable of sedentary to light work, but recommended remand to determine if plaintiff's alleged nerve root impairments in his right leg prevented him from performing a wide range of light work activities. My June 29, 1983 order adopted the magistrate's report and remanded solely for determination of that issue. I said, "Upon remand, the record should be supplemented to include medical opinions as to whether plaintiff would be capable of performing a wide range of light work activities." Thus, I implicitly affirmed the ALJ's finding as to RFC. No provision was made for reconsideration of plaintiff's RFC.

■ The "law of the case" doctrine prevented the Secretary from redetermining plaintiff's RFC. "[O]n the remand of a case after appeal, it is the duty of the lower court or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation...." *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir.1967). This limitation remains true even though the ALJ discussed new evidence (Sobel's testimony) in making his new finding: "[N]or will a court remand to permit new proofs where it would merely be giving the party an opportunity to reopen the case to make his proofs stronger." *Id.* An affirmance of an earlier finding, even an implicit one, establishes the "law of the case" that must be followed in subsequent proceedings. *Carrillo v. Heckler*, 599 F.Supp. 1164, 1168 (S.D.N.Y.1984), quoting *Mefford v. Gardner*. Because the ALJ exceeded the scope of the remand order and did not follow the law of the case, the court must reverse that aspect of the ALJ's new findings.

## III. Weighing The Conflicting Opinions

■ The determination of whether plaintiff is capable of a full range of sedentary to light work depends upon whether there is substantial evidence to support Sobel's opinion. Although Sobel's opinion that plaintiff is capable of medium work goes beyond the scope of the remand, it may be used as evidence that plaintiff is capable of a full range of light work since that finding is implied within a capability of medium work, § 404.1567(c).

### A.

■ Although plaintiff's treating physician opined that plaintiff is disabled, his opinion is not conclusive on the Secretary. *Halsey v. Richardson*, 441 F.2d 1230, 1236 (6th Cir.1971); 20 C.F.R. § 404.1527. The treating physician's opinion may be discounted where it is unsupported by sufficient medical data, *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir.1984); *Kirk v. Secretary of HHS*, 667 F.2d 524, 538 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983), or where it conflicts with other medical evidence; *LeMaster v. Weinberger*, 533 F.2d 337, 340 (6th Cir.1976). The medical advisor's testimony when taken with other

supporting evidence is competent to support a denial of disability benefits. *Lane v. Gardner*, 374 F.2d 612, 615 (6th Cir.1967). The Secretary, and not the court, is charged with the duty of weighing evidence and resolving any conflicts therein. *Wokojance v. Weinberger*, 513 F.2d 210, 212 (6th Cir.), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 82 (1975); *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir.1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971). In weighing conflicting evidence, the trier of fact may give greater weight to the opinions of a specialist than to those of a general practitioner. This is so even when the general practitioner is plaintiff's treating physician and his diagnosis is not properly supported. 4 Soc. Sec.Rep. (RIA) ¶ 30,469 (1984).

### B.

In reports dated March 8, 1984 and May 4, 1984 (Tr. 343–53), Zeiger diagnosed arthritis of the lumbar spine, old compression fracture at T–12, angina pectoris, left [sic: right] foot drop, and anxiety (Tr. 344). He opined that plaintiff could not stand even 1–2 hours during a work day, could sit only for 1–2 hours, could not lift, and could not even handle a sit-stand job that allowed 20 minute rests every hour. He recommended that plaintiff lie down for a substantial period each day. A pulmonary function test on April 11, 1984 showed only borderline problems (Tr. 346), although an earlier test from October 19, 1983 suggested severe restrictive lung impairment (Tr. 352). A 24–hour Holter monitor showed occasional sinus tachycardia, borderline abnormal, but recommended clinical correlation (Tr. 347). An ECG showed abnormal (Tr. 350), old inferior infarcation, and possible ischemia. A radiological exam showed some degeneration of the cervical discs with some arthritis, although not severe (Tr. 353).

Zeiger also opined in a May 7, 1984 letter that plaintiff had the same impairments as above, plus lumbar radiculitis, arthritis of the cervical spine, chronic obstructive pulmonary disease (COPD), and chronic anxiety and depression. Zeiger instructed plaintiff not to bend, twist or lift. He opined that plaintiff is totally disabled. This letter is not accompanied by any supporting medical data, as required by *Kirk*. Although Zeiger was plaintiff's treating physician for the previous 18 months, there are no other reports from Zeiger to substantiate his diagnosis of total disability. It is thus necessary to assess whether the objective medical data included with the March, 1984 and May, 1984 reports support such a conclusion.

#### 1.

■ Angina is raised for the first time in these reports. Perhaps it is based on the ECG report at Tr. 350, which reported possible ischemia and an old inferior infarction. The ALJ, relying on Sobel (Tr. 290), noted that the Holter monitor study showed only borderline abnormal explainable by the effects of medication. Also, the Holter monitor study recommended clinical correlation which does not appear in the record. Arteriosclerosis of the aorta was diagnosed in December, 1980, although plaintiff had no cardiorespiratory complaints (Tr. 311–12). This is in contrast to a report (Tr. 320) that there is no active disease in the chest and heart and major vessels are normal, although there may have been some early sclerosis of the aorta. Mild atherosclerosis of the aorta was also reported at Tr. 338. The only other relevant reference in the record is at Tr. 307, a report dated July 21, 1980, which noted "no history of any trouble with [plaintiff's] heart." Plaintiff is currently taking medicine for his "heart problem" (Tr. 301). Overall, there is substantial evidence that plaintiff does not have heart impairments that preclude a full range of light work.

As to Zeiger's diagnosis of COPD, this seems to be based on the October, 1983 pulmonary function study. The ALJ, relying again on Sobel (Tr. 290–91), concluded that the earlier test was probably the result of technical error since the test of April, 1984 was normal and the October, 1983 test was so grossly different. Emphysema was diagnosed in December, 1980

although plaintiff had no cardiorespiratory complaints (Tr. 311–12). Emphysema was also noted at Tr. 320, although there is no indication in the record that this is disabling or the source of pain or limitation.

■ As to anxiety and depression, there is no objective data in the record to support this finding, nor is there a showing that Zeiger, a general osteopath, was qualified to make more than an informed guess as to these psychological conditions. Also, the manner in which Zeiger comments on the anxiety—as a product of plaintiff's long illness—supports an interpretation that these diagnoses do not rise to the level of clinical findings but are casual comments on plaintiff's state of mind.

■ The severity of plaintiff's exertional limitations are also unsupported by the objective medical evidence gathered on remand, including requirements of no bending, twisting, or lifting. The compression fracture at T–12 discovered in 1979 would not commonly lead to permanent problems (Tr. 287). The objective medical evidence showed the fracture to have healed by December, 1980 (Tr. 289, 320). It did not affect plaintiff's gait; in July, 1980, before the onset of peroneal palsy in his right foot, he was noted to walk with a "surprisingly normal" gait (Tr. 308). This examiner found minimal objective findings to support plaintiff's subjective back complaints (Tr. 309). Other reports note that the spine is normal (Tr. 328) with minimal degeneration (Tr. 313, 321). The same examiner opined that plaintiff could return to some sort of suitable work wearing a back brace.

2.

■ Beginning in mid-1980, plaintiff's right foot began to give out on him (Tr. 312–19, 324–25, 327). This was documented by abrasions on his knee. Peroneal palsy of the right leg was first diagnosed in September, 1980 and later in December, 1980 (Tr. 328, 311–12, 326). There is also a reference to peroneal palsy in February, 1981 (Tr. 328). Sobel noted that further studies, such as EMG's, were recommended in 1981 (Tr. 327–29), but plaintiff does not

appear to have followed up (Tr. 328). Although there is some atrophy of the right leg and extensive loss of sensation in the right foot, deep tendon reflexes were normal (Tr. 316, 327, 328–29). Tr. 313 shows normal EKG. Although plaintiff says he cannot lift his right leg without a brace (Tr. 263), Tr. 328–29 opines that plaintiff is capable of normal ambulation with a foot brace and back corset, which the ALJ confirmed visually at the hearings. Plaintiff says he can walk a "block or so" (Tr. 281), he does some light housework (Tr. 262), and he drives himself around (Tr. 251, 262, 285, 307). I find substantial evidence that plaintiff's foot drop does not preclude a wide range of light work activities.

3.

■ The sole remaining question is whether plaintiff has the strength in his arms and legs to do a wide range of light work activities. Sobel opined that, with the exception of a December, 1980 opinion that plaintiff has a weak right arm and right leg (Tr. 313), there is no objective medical evidence in the record that would preclude plaintiff from medium work, § 404.1567(c) (lifting 50 pounds maximum, 25 pounds frequently). Light work requires lifting 20 pounds maximum and 10 frequently, § 404.1567(b). Sedentary work requires lifting a maximum of 10 pounds, § 404.-1567(a). At the first administrative hearing, the medical advisor (Gagliardi) testified that on the basis of the objective medical evidence in the record at that time, plaintiff should be able to do sedentary work (Tr. 79). As recently as 1979, when plaintiff worked in the automotive industry, he indicated that he lifted 20–50 pounds frequently (Tr. 130); he has also indicated that there was no upper limit to the amount of weight he was required to lift in this last job (Tr. 194). Although a December, 1980 report indicates a weakened right arm (Tr. 313), there is no indication of injury or atrophy; further, a January, 1981 report indicates that the only decrease in muscular strength was in the right foot (Tr. 198). The January, 1981

report also indicated normal reflexes in the arms. The failure of the medical evidence to indicate any muscle weakness or atrophy can be determining factors in assessing RFC. 4 Soc.Sec.Rep. (RIA) ¶ 30,615 (1986).

■ The objective medical evidence since the first administrative hearing does not contradict the opinions of Sobel and Gagliardi. The only evidence to the contrary is plaintiff's own testimony that now he cannot lift even 5–6 pounds (Tr. 283) and Zeiger's opinion that plaintiff cannot lift and must lie down frequently. Zeiger's opinion, as discussed above, is without objective medical support; all the evidence as to plaintiff's musculoskeletal system indicates that he can lead a normal lifestyle with the use of a brace. There are also no significant nonexertional limitations. Finally, the treating physician is a general practitioner without board certification in any area (Tr. 358), whereas Sobel is a board-certified orthopedic surgeon (Tr. 300). As such, the ALJ and Secretary were allowed to give more weight to Sobel's opinions as to plaintiff's musculoskeletal problems.

■ As to plaintiff's testimony on the extent of his pain and physical limitations, the ALJ found it uncredible. It is permissible for the ALJ to dismiss claims of pain so long as he does not do so based solely on his observations at the hearing. *Weaver v. Secretary,* 722 F.2d 310 (6th Cir.1983). "[T]he ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation." *Id.* at 312. Here the ALJ gave full consideration to each of the underlying impairments that could have been the source of plaintiff's pain (Tr. 220–26). He properly discounted each of the medically determinable impairments that could be shown to be the cause of plaintiff's pain, § 404.1529. As to plaintiff's testimony on lifting, the ALJ was also empowered not to credit that evidence. The ALJ concluded that plaintiff was exaggerating; this is the kind of credibility determination by a fact-finder that is owed special deference under *Beavers v. Secretary of HEW,* 577 F.2d 383, 387 (6th Cir. 1980). There is thus substantial evidence that plaintiff had the exertional capabilities for a full range of light work activities.

## IV. Onset Date

■ Considering the evidence in the record as a whole, I find substantial evidence to support a finding that plaintiff was capable of a full range of light work activities. The grid § 202.10 directs a finding of not disabled for the period under analysis during the first administrative hearing and up until plaintiff was 55 years old.

At the time of the second ALJ report, however, the ALJ found that plaintiff was 55 years old and thus of "advanced age." 20 C.F.R. § 404.1563(d). The ALJ also found that plaintiff met the disability insurance requirements of the Act through the date of his decision. Had the ALJ properly applied the "light" grid, rather than the "medium" grid, § 202.01 would have directed a finding of disabled.

Plaintiff was therefore "disabled" within the meaning of the Act from the date of his 55th birthday. Although the regulations prohibit a mechanical application of the age categories in borderline situations, 20 C.F.R. § 404.1563(a), it is proper in this case to conclude that plaintiff became "disabled" within the meaning of the Act only upon attaining the age of 55. In a case where age is the critical factor in determining whether the grid directs a finding of disabled or not disabled, the Secretary will put a claimant in the next higher age category at least where he reaches that age before the Secretary's final decision. *Cf. Chester v. Heckler,* 610 F.Supp. 533, 535 (S.D.Fla.1985). Here, plaintiff was 55 at the time of the ALJ's second report, so there is no difficulty in concluding that the grid directed a finding of disabled at that time.

■ This raises the issue of whether plaintiff should also be found disabled back to the date of his claimed onset of disability. The few courts to address a mechanical application of age categories in a borderline situation have remanded the cases to SSA for more individualized determinations. *See, e.g., Kane v. Heckler,* 776 F.2d

1130 (3d Cir.1985); *Ford v. Heckler*, 572 F.Supp. 992 (E.D.N.C.1983); *Hilliard v. Schweiker*, 563 F.Supp. 99 (D.Mont.1983). This case does not require remand for further consideration of individual factors, however. This has already been accomplished by the prior remand and my consideration of plaintiff's individual factors above. Consideration of all of plaintiff's limitations clearly demonstrates that plaintiff is capable of a full range of light work; as such, the grid directed a finding of not disabled when plaintiff was only "approaching advanced age." Furthermore, there is no problem with concluding that plaintiff suddenly became disabled upon his 55th birthday. While this determination is admittedly mechanistic, the cases interpreting regulation 404.1563(a) demonstrate a concern that claimants will be found *not disabled* because they failed to attain the next highest age category until either after the ALJ's or Secretary's decision or after their insured status expires. That is not the case here. Plaintiff was of "advanced age" and met the insured status requirements at the time of the ALJ's second report. Also, proper use of the grid by the ALJ would have directed a finding of *disabled*.

SO ORDERED.