849 F.2d 608
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mae F. BENSON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1573.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr., and DAVID A. NELSON, Circuit Judges.
 
 
 1
 This is an appeal from a district court judgment affirming a denial of disability benefits under the Social Security Act. The plaintiff contends that a combination of coronary artery disease, labile hypertension, angina, and myocardial ischemia prevents her from performing the duties of her last job. Believing that there was substantial evidence to support the Secretary's determination that the plaintiff was not disabled, we shall affirm the district court's judgment.
 
 
 2
 * In May of 1986, when Ms. Benson's case was heard by an administrative law judge, she was 55 years old. Some five and one-half years earlier, in December of 1981, her last employer, the Champion Spark Plug Company, had laid her off from her job as a spark plug turner. That job required her to sit for eight hours a day and to lift not more than a single pound at a time. She had held the position since 1971. Champion recalled her in September of 1983, but she did not return to work. She testified that she was experiencing chest pains and dizziness that prevented her from doing so.
 
 
 3
 Ms. Benson's recorded medical history antedates her layoff from Champion. An electrocardiogram performed in May of 1980 reflected premature contractions and anteroseptal inferolateral myocardial ischemia. Those problems continued after her layoff, as reflected by notes from various medical examinations. In September of 1982 she experienced shortness of breath, dizziness or syncope and cardiac arrhythmias. In November of 1982 she went to a hospital emergency room with headaches and high blood pressure. In December of 1982 a clinic visit showed that Ms. Benson had hypertension that was inadequately controlled, along with cardiac arrhythmias due, perhaps, to sick sinus syndrome.
 
 
 4
 The medical records contain many entries indicating that Ms. Benson responded well to treatment. From January of 1983 through August of that year the records show that her hypertension was under control and that her other problems were not severe. In June of 1983 Ms. Benson took a treadmill exercise test that she was able to complete to 7 METS. Under the Secretary's rulings, this performance shows that she could perform light work. SSR-82-51 B.1 (1982) (Guideline for Residual Functional Capacity Assessment in Musculoskeletal and Cardiovascular Impairments).
 
 
 5
 Ms. Benson testified that in late 1983 or thereabouts she began experiencing severe chest pains three or four times a day. There are no 1983 medical records to substantiate this testimony, but in October of 1984 Ms. Benson's treating physician, Anthony Harris, M.D., wrote her attorney that she suffered from labile hypertension and from "increasing and accelerating Angina Pectoris secondary to Arteriosclerotic Heart Disease." He opined that "she would be taking risk [sic] to be envolved [sic] in any activity which would have any degree of stress association." Silas G. Cardwell, Jr., M.D., another treating physician, scrawled an undated note to "whom it may concern" in which he stated that he had seen Ms. Benson for labile hypertension and "symptoms suggestive of myocardial ischemia." He opined that "Ms. Benson would be taking great risk should she involve herself in any stressful (both mental & physical) activity," and recommended "that see [sic] not seek further imployment [sic] for an indefinite period of time."
 
 II
 
 6
 The ALJ determined that Ms. Benson retained the functional capacity to perform her past work as a spark plug turner. The ALJ relied in part on the opinion of Benjamin M. Lewis, M.D., a physician retained by the Secretary as a medical advisor to help evaluate Ms. Benson's application. On January 6, 1986, Dr. Lewis provided the ALJ with a comprehensive and cogent evaluation concluding as follows:
 
 
 7
 "I believe that the claimant would be able to walk at a moderate pace on level ground indefinitely. Her ability to sit would not be impaired. She could perform the activities of daily living such as bathing and personal hygiene. She should be able to drive and to take public transportation without difficulty."
 
 
 8
 After reviewing the ALJ's findings and the administrative record, a magistrate recommended that the district court find that the Secretary's determination was supported by substantial evidence. The court did so, and this appeal followed.
 
 III
 
 9
 Although a treating physician's opinion is entitled to great weight, Stamper v. Harris, 656 F.2d 108, 111 (6th Cir.1981), the Secretary is not bound by it if it conflicts with objective medical findings. LeMaster v. Weinberger, 533 F.2d 337, 340 (6th Cir.1976). And while a physician's opinion as to the ultimate fact of total disability may constitute probative evidence, the last word on that issue must be spoken by the Secretary. 20 C.F.R. Sec. 404.1527.
 
 
 10
 The issue here is whether the record contains substantial evidence that Ms. Benson is able to perform her past work. 20 C.F.R. Sec. 404.1520(e). We conclude that it does. Dr. Lewis' opinion shows that Ms. Benson was able to perform physical tasks (walking and caring for her personal hygiene) no less difficult than the demands of her past work. The results of Ms. Benson's treadmill exercise test show that Ms. Benson is able to perform "light work," a category more strenuous than her past work, which was "sedentary." 20 C.F.R. Sec. 404.1567(a). Throughout 1983 the records of Ms. Benson's various medical evaluations are positive in tone, suggesting that her ailments are not totally disabling.
 
 
 11
 The letters of Ms. Benson's treating physicians, although entitled to particularly respectful consideration, do not require us to reverse the Secretary's determination. The diagnosis in Dr. Harris' letter is more severe than the condition reflected in notes made during Ms. Benson's medical evaluations. Drs. Harris and Cardwell recommended that Ms. Benson avoid stressful activities, but nothing in the record suggests that Ms. Benson's past work was stressful.
 
 
 12
 Don K. Harrison, Ph.D., a vocational expert whom the Secretary retained, opined that if Ms. Benson's ailments were as severe as she testified, Ms. Benson would be totally disabled. This opinion, however, does not answer the question of how severe Ms. Benson's ailments actually were. The evidence on that question did not preclude a decision that Ms. Benson retains the capacity to do her past work.
 
 
 13
 We AFFIRM the judgment of the district court.