Harold PRESTON, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. 2:91–CV–25.

United States District Court, S.D. Ohio, E.D.

Feb. 26, 1992.

James Paul Monast, Marchese & Associates, Columbus, Ohio, for plaintiff.

Joseph E. Kane, U.S. Attorney's Office, Columbus, Ohio, for defendant.

## OPINION AND ORDER

HOLSCHUH, Chief Judge.

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Secretary of Health and Human Services denying plaintiff's application for a period of disability and disability insurance benefits. This matter is now before the Court on the cross-motions of the parties for summary judgment.

Harold Preston filed his current application for a period of disability and disability insurance benefits on July 27, 1988, alleging that he has been disabled since February 1985 as a result of problems with his lower back and a nervous condition. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

On August 18, 1989, plaintiff, represented by counsel, appeared and testified at the administrative hearing, as did Charlotta Ewers, who testified as a vocational expert. On November 7, 1989, a supplemental hearing, at which Ms. Ewers testified, was held.

In a decision dated December 4, 1989, the administrative law judge found that, despite plaintiff's severe impairments, he nevertheless has the residual functional capacity to perform at least part-time sedentary work that would involve no more than simple repetitive tasks and alternative sitting and standing, without fine hand/finger manipulation. Considering only plaintiff's exertional impairments, the administrative law judge found that application of Rule 201.25 of the Medical–Vocational Guidelines would direct a finding of not disabled. Considering both plaintiff's additional exer-

tional and non-exertional limitations, the administrative law judge found that there exists in the national economy a significant number of jobs which plaintiff could perform, including jobs as an assembly machine tender, type copy examiner, and dowel inspector. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. That decision became the final decision of the Secretary of Health and Human Services when the Appeals Council declined review on November 19, 1990.

Harold Preston was born October 17, 1945. He has a seventh-grade education and prior relevant work experience as a janitor and truck driver. Mr. Preston's insured status expired on March 31, 1988.

Following an injury at work, plaintiff was examined in November 1985 by Thomas F. Goodall, D.O., for complaints of low back pain.

In March 1987, Milton F. Nathan, M.D., noted that his clinical examination of plaintiff was "unrevealing" except for brisk carotid interiolar narrowing. Dr. Nathan diagnosed borderline hypertension.

The following month, Stephen P. Taylor, D.C., examined plaintiff and noted back movement on forward flexion to 60 degrees, on extension to 15 degrees, and on lateral flexion to 20 degrees bilaterally. The chiropractor noted back tenderness and swelling, but no atrophy. Mr. Taylor diagnosed moderate lumbosacral sprain.

In July 1987, the chiropractor expressed his opinion that plaintiff required rest and would be unable to stand for longer than 30 minutes at a time. In October 1988, the chiropractor noted that the plaintiff experienced sensory loss in the left buttock, thigh, and calf, but that he had good strength and no muscle spasm, atrophy or reflex loss. The chiropractor described Mr. Preston's gait as waddling, but noted that Mr. Preston was able to walk on his heels and toes and arise from a squatting position. The chiropractor diagnosed chronic lumbar sprain and concluded that plaintiff was "disabled due to lumbar injury and tremors." *A.R.*, 225.

In July 1987, Marvin C. Vice, D.O., examined the plaintiff, noting a somewhat antalgic gait, but an ability to walk on heels and toes. Range of motion of the lumbar spine was moderately decreased. Straight leg raising was positive at 30 degrees on the right, and at 4 degrees on the left. There was some muscle weakness and very general non-dermatomal sensory loss in the left leg. There were no muscle spasms and deep tendon reflexes were equal. In a physical capacities evaluation completed in May 1989, Dr. Vice indicated that Mr. Preston could sit for two hours at a time, for a total of three hours throughout an eight-hour workday. He could stand or walk for a total of only one hour. He could occasionally lift up to 20 pounds and carry up to 10 pounds. He was unlimited in the use of his hands for repetitive grasping, or pushing and pulling of arm controls. He could not use his hands for fine manipulation, however. Mr. Preston was limited in his ability to use his feet for repetitive movements. He could occasionally reach, but could never bend, squat, crawl or climb. He had total restrictions upon working around unprotected heights, and moderate restrictions upon working around moving machinery and in exposure to marked changes in temperature and humidity. He was also moderately restricted in driving automotive equipment.

Plaintiff's insured status expired as of March 31, 1988.

In January 1989, Mark A. MacNealy, D.O., examined plaintiff and noted a normal gait, adequate ranges of motion throughout the body, good muscle tone and strength.

On July 26, 1989, Dr. Vice again saw Mr. Preston. Range of motion of the lumbosacral spine was limited on forward flexion to 25 degrees, on extension to 5 degrees, and on side bending to 20 degrees. Bilateral rotation was performed to 20 degrees. There was no muscle spasm or atrophy. Dr. Vice noted an antalgic gait on the left but an ability to walk on heels and toes. Deep tendon reflexes were equal and straight leg raising was slightly positive on the left. X-rays of the lumbosacral spine

showed narrowing at L5–S1 with some generalized spondylosis. Dr. Vice expressed his opinion that plaintiff was disabled as a result of his back problems and the tremors.

On February 13, 1990, a myelogram revealed a herniated lumbar disc at L5–S1 on the left. In June of that year, plaintiff underwent a successful decompression lumbar laminectomy with diskectomy at L5–S1 on the left.

Mr. Preston has also undergone psychological evaluations. In January 1989, Jerry Flexman, Ph.D., performed a psychological evaluation at the request of the state agency. Dr. Flexman noted good mood and friendly affect. Mr. Preston was oriented in all spheres. On the WAIS, plaintiff achieved a verbal I.Q. score of 76, placing him in the borderline range of mental retardation. Dr. Flexman diagnosed a somatoform pain disorder but expressed his opinion that Mr. Preston could perform simple repetitive tasks, get along with workers and supervisors, and sustain attention and concentration.

In February 1989, Phyllis Rosen, Ph.D., performed a psychological review for the state agency. She diagnosed mental retardation in light of Mr. Preston's borderline I.Q., and a somatoform disorder based upon the evidence of chronic pain and hypochondriacal symptoms. She also diagnosed a personality disorder based upon evidence of pathological dependance, with passivity or aggressiveness. Dr. Rosen rated the degree of impairment resulting from these conditions as slight to none for the most part. However, Dr. Rosen indicated that Mr. Preston often had deficiencies of concentration, persistence or pace, resulting in the failure to complete tasks in a timely manner. Dr. Rosen also indicated that Mr. Preston was markedly limited in his ability to understand, remember and carry out detailed instructions. He was moderately limited in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest. He was also moderately limited in his

ability to set realistic goals and make plans independently of others. In her comments, however, Dr. Rosen indicated that Mr. Preston is limited to simple instructions. Concentration was not significantly limited except that, over extended periods, Mr. Preston would be distracted by pain and would want several rest periods, which would pose a moderate limitation on completing a normal workday or work week. He interacts with others in an appropriate and satisfactory manner, although he would have difficulty setting and reaching realistic goals independently. Dr. Rosen indicated a residual functional capacity for sedentary low stress work based on Mr. Preston's mental factors alone.

At the initial administrative hearing, Mr. Preston testified that he could perform no bending or lifting and could not walk or sit for any extended periods of time. He described his tremors as requiring him to drink liquids with a straw. He complained of memory problems, although he acknowledged that he has not sought treatment for the problem. He was prescribed Inderal for his tremors but testified that the medication did not help.

Mr. Preston testified to a constant ache on both sides of his lower back. He also has developed numbness in his left leg and left side. Although he takes no pain medication for his back, he does use a TNS unit. He has not been hospitalized for his pain.

Mr. Preston has suffered from tremors all of his life. Nearly all of the examining physicians have noted tremors in Mr. Preston, which Dr. MacNealy diagnosed as "familial." A.R., 236. Mr. Preston testified that his tremors have become worse since his back injury. According to Mr. Preston, his tremors makes his back pain worse. His most comfortable position is lying on his side. He can stand for up to 20 minutes at a time and can sit longer if he is able to stand up frequently. He lies down for 45 minutes to an hour each day. He relies upon his wife to pull his shoes on. His wife also shaves him because of the tremors. He relies upon his wife and his three daughters to perform household cleaning chores. He accompanies his wife

to the grocery store approximately twice a week. He rarely visits others, but his friends come to visit him. He testified that he can perform virtually no lifting. Based on his doctor's advice, he does not use a cane.

The administrative law judge posed a number of hypothetical questions to the vocational expert at the administrative hearing, all assuming "the age, education and work experience of Mr. Preston." *A.R.*, 82–83. At the supplemental administrative hearing, the administrative law judge continued to pose hypothetical questions to the vocational expert:

> Ms. Ewers, are there any jobs in the regional economy at the sedentary exertional level with the following restrictions on the job responsibilities: first of all, that the jobs only involve simple repetitive task [sic], secondly, that the worker be allowed to freely alternate positions between sitting and standing, and thirdly, that the jobs require any fine hand or—finger manipulation, are there any such jobs such as that—as that in the regional economy?

*A.R.*, 98. Ms. Ewers testified that a minimum of 6,000 jobs exist in the regional economy that meet these criteria. Ms. Ewers also testified that, of those 6,000 jobs, approximately 20 percent of them, or 1,200, may be performed on a part-time basis. Those part-time jobs would be performable at 20 hours per week or more and would pay at least $300 per month. Ms. Ewers specifically testified that Mr. Preston's hand tremors would not pose an impediment to performing the work outlined by her.

This Court's review of the decision of the Secretary is limited to a determination of whether or not the findings of the Secretary are supported by substantial evidence. 42 U.S.C. § 405(g). *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.1976). It is not the Court's function to resolve conflicts in the evidence or to determine issues of credibility. This is solely the province of

the Secretary. *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir.1975).

■ Plaintiff contends first, that the administrative law judge erred in posing inadequate hypotheticals to the vocational expert. Specifically, plaintiff complains that the administrative law judge never asked the vocational expert to assume restrictions on fine-hand/finger manipulation. However, the first hypothetical posed by the administrative law judge to the vocational expert at the supplemental administrative hearing did specifically include such a limitation. *A.R.*, 98.

■ Next, plaintiff complains that, in this hypothetical, the administrative law judge did not specifically and expressly ask the vocational expert to assume the vocational profile of this particular plaintiff, *i.e.*, Mr. Preston's age, education and work experience. However, at the initial administrative hearing, all the hypotheticals were preceded with the phrase "... considering the age, education and work experience of Mr. Preston...." *See, e.g., A.R.*, 82. The supplemental hearing convened on November 7, 1989, simply continued that inquiry. The mere fact that the administrative law judge did not make express that the age, education and work experience of this particular claimant formed the basis of the administrative law judge's hypothetical to the vocational expert will not serve to invalidate the decision of the Secretary. It is clear that the vocational expert fully understood that, in the context of this hearing, it was *Mr. Preston's* vocational profile that was being evaluated. To the extent that the administrative law judge may have committed error in not making such an assumption express, that error was harmless. *See Bradford v. Secretary of Health and Human Services*, 803 F.2d 871, 874 (6th Cir.1986); *Brown v. Secretary of Health and Human Services*, 801 F.2d 361, 363 (10th Cir.1986).

■ Next, plaintiff complains that two of the five jobs identified by Ms. Ewers, upon whom the administrative law judge relied in reaching his decision, are not accorded the same exertional level by the Dictionary of Occupational Titles as Ms.

Ewers accorded them. This issue was not raised before the administrative law judge or in counsel's very extensive cross-examination of Ms. Ewers. *See Goodman v. Secretary of Health and Human Services,* 811 F.2d 605 (6th Cir.1986). Ms. Ewers testified as an expert, a characterization not opposed by plaintiff at the administrative hearings. Ms. Ewers clearly testified that, given the exertional and non-exertional impairments found by the administrative law judge, Mr. Preston could nevertheless perform substantial gainful employment. The testimony of the vocational expert was based upon a fair review of the evidence and accurately represented plaintiff's limitations. *See Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 781 (6th Cir.1987). Her testimony therefore constituted substantial evidence in support of the decision of the Secretary.

■ Plaintiff also complains that the administrative law judge erred by excluding from his hypothetical to the vocational expert a medically determined mental impairment. However, the administrative law judge specifically asked the vocational expert to consider a person who, with plaintiff's vocational profile, is nevertheless restricted to simple repetitive low stress employment. The reports of both Dr. Flexman, who psychologically evaluated the plaintiff, and of Dr. Rosen, who reviewed the evidence of record and who concluded that plaintiff was capable of performing sedentary low stress work, are consistent with that hypothetical.

■ Finally, plaintiff contends that a finding of no disability is inconsistent with the Secretary's own Medical–Vocational Guidelines. In this regard, plaintiff refers to § 201.00(h) of the Medical–Vocational Guidelines which provide, in pertinent part, that "a finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work." The regulation goes on to provide the example of a person restricted to unskilled sedentary jobs and who is also unable to engage in bilateral manual dexterity. Such person's inability to perform jobs requiring bilateral manual dexterity, the regulation provides,

significantly compromises the only range of work for which the individual is otherwise qualified (*i.e.:* sedentary)[; thus] a finding of disabled would be appropriate....

Section 201.00(h).

As an initial matter, § 201.00 does not *mandate* a finding of disability; it merely indicates that such a finding "is not precluded." Moreover, plaintiff's vocational profile does not clearly meet the hypothetical example set out in the section. Although plaintiff is limited in his ability to engage in fine manipulation, the example requires a lack of bilateral manual dexterity, both gross and fine. Plaintiff is not so limited. In short, this Court concludes that the Guidelines do not direct a finding of disability under the circumstances presented in this case.

In short, and having carefully reviewed the record in this case, the Court concludes that the decision of the Secretary is supported by substantial evidence and must, therefore, be affirmed.

WHEREUPON plaintiff's motion for summary judgment is DENIED; the Secretary's motion for summary judgment is GRANTED. The decision of the Secretary is hereby AFFIRMED and this action is hereby DISMISSED.